Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 93 C 4788 | **DATE** | 6/26/2000 |
| **CASE TITLE** |  | C.R. Bard vs. M3 Systems | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for entry of judgment and post judgment interest on its predatory gun modification claim is granted. Accordingly, judgment is entered in favor of the defendant and against plaintiff in the amount of $762,747.00. Post judgment interest is also entered in the amount of $199,838.00. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 6 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 2 7 2000 | |
| | Notified counsel by telephone. | | date docketed | 379 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/26/2000 | |
| | | | date mailed notice | |
| MPJ | courtroom deputy's initials | 00 JUN 26 PM 5:14 | MPJ | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| C.R. BARD, INC. | ) | |
| | ) | |
| Plaintiff-Counterdefendant | ) | |
| | ) | |
| v. | ) | No. 93 C 4788 |
| | ) | |
| M3 SYSTEMS, INC. | ) | |
| | ) | |
| Defendant-Counterclaimant | ) | |

DOCKETED
JUN 2 7 2000

## MEMORANDUM OPINION AND ORDER

C.R. Bard, Inc. ("Bard") brought a patent infringement action against its competitor M3 Systems, Inc. ("M3"), which in turn raised antitrust counterclaims against Bard. A jury found in favor of M3 on the claims and counterclaims, and Bard appealed. The verdict on one of Bard's three counterclaims was upheld, but the Federal Circuit vacated and remanded the damage award for redetermination. M3 seeks an entry of judgment and post-judgment interest, while Bard claims a new trial is necessary to fairly determine damages on the surviving counterclaim. I grant M3's motion for entry of judgment in the amount of amount of $762,747, which is comprised of $254,249 for lost profits from Bard's predatory conduct trebled as required by §4 of the Clayton Act. I also grant M3's motion for postjudgment interest from the time of entry of the first judgment in this case.

379

I. Background

In August 1993, Bard, the patent holder for "biopsy guns" used to take samples of body tissue for biopsy purposes, sued M3 Systems asserting that M3's ProMag biopsy gun and ACN/SACN biopsy needle assemblies infringed its patents. In response, M3 raised the defenses that the patents were invalid and not infringed, and also raised counterclaims and sought damages on three theories, namely that Bard: (1) fraudulently obtained and misused certain patents, (2) brought the patent infringement claims in bad faith, and (3) made predatory modifications to its reusable biopsy guns so that M3's needles could not be used in the Bard gun. M3 presented evidence that it had suffered damages of $1,158,395 on the first and second claims[1] and $254,249 in lost profits from replacement needle sales on the predatory gun modification claim, totaling $1,412,644. The jury found in favor of M3 and against Bard on every question and awarded M3 $1,500,000 in compensatory damages, primarily comprised of litigation costs, which were trebled as required by § 4 of the Clayton Act.

Bard appealed the jury's verdict, and the Federal Circuit held

---

[1] The damages for these *Walker Process* and *Handgards* claims represented the fees and expenses incurred by M3 to defend against Bard's patent claims.

2

as a matter of law that M3 had proved neither fraud on the Patent Office nor that Bard's infringement claims were brought in bad faith. The jury verdict on these counts was reversed. However, the Federal Circuit affirmed the jury's decision that Bard made predatory modifications to its biopsy-taking guns to prevent the use of M3's and other competitors' needles. M3 had to prove that Bard made a change in its gun for predatory reasons, i.e., for the purpose of injuring competitors in the replacement needle market, not to improve the operation of the gun. The jury specifically found that Bard enjoyed monopoly power in the market for replacement needles and that the change in its patented product was made for the purpose of maintaining this monopoly. The Federal Circuit concluded that the evidence was sufficient in this regard. Because only one of the three counterclaims was upheld, but the jury form contained one single damage award, the Federal Circuit remanded the damages award for "further proceedings to determine the proper amount of damages to be assessed on the antitrust counterclaim." *C.R. Bard, Inc. v. M3 Systems, Inc.* 157 F.3d 1340, 1346 (Fed. Cir. 1998). "The judgment of antitrust violation on the ground of attempt to monopolize is affirmed, but the antitrust damages award is vacated, for redetermination upon remand." *Id.* at

1346.

II. Judgment Calculation

M3 seeks an entry of judgment in the amount of $254,249 (before trebling) for the antitrust count upheld on appeal. This amount is taken directly from the damages model M3 submitted to the jury which calculated its lost profits from the decrease in needle sales from Bard's predatory modification to its biopsy gun. Bard argues that a new trial is required to resolve the issue of damages. Bard's most basic arguments are that the jury was prejudiced and that because its award was not itemized and exceeded M3's damage request, damages must be retried.[2]

Bard claims first that the jury's verdict was the result of prejudice. According to Bard's argument, because the Federal Circuit reversed the jury's verdicts against it for fraud and inequitable conduct, all evidence introduced in support of those claims was irrelevant and prejudicial. Bard identifies several pieces of evidence presented to the jury unrelated to the antitrust monopolization claim which could have prejudiced the jury. These

---

[2] Bard also points out that a new trial will be neither expensive or lengthy. This is irrelevant. Based on the Federal Circuit's mandate, if the record demonstrates that a new trial is necessary, I will hold a new trial.

4

bald, conclusory assertions are not persuasive. Bard does not deny the accuracy of this evidence or explain how this evidence prejudiced it or why it was that the jury could not consider the counterclaims separately.[3] Bard offers no specific acts of misconduct or evidentiary errors, nor did it present any to the appeals court.

Bard's only evidence that the jury was in fact prejudiced is that it awarded M3 $1.5 million rather than the $1,412,644 it specifically requested, or approximately 6% more than what it sought. As an explanation, M3 offers that its damage calculation presented to the jury stopped calculating litigation expenses at August 15, 1998 but the trial did not finish until September 28, 1995; it claims that the jury probably awarded the additional amount to cover attorneys fees which accrued over that time. Perhaps the jury simply "rounded up," not anticipating that conflicting meanings would be attributed to its decision. I do not open the "black box" of jury deliberation. Whatever the reason, the comparatively small difference between the award and M3's request is not sufficient to conclude that the jury's verdict was the result of passion or prejudice. Even if the award were excessive,

---

[3] Bard introduced evidence of M3's alleged wrongdoing as well, but Bard is presumably not arguing that this prejudiced the jury.

5

which I do not think it is, prejudice is not inferred from mere excessiveness. *Kaminski v. Chicago River & Indiana R. Co.*, 200 F.2d 1, 5 (7th Cir. 1952). In the *Moquin* case upon which Bard attempts to rely, the district court itself concluded that the jury was impacted by prejudice. I make no such finding here. Moreover, Bard's suggestion that evidence from the two counts rejected by the Federal Circuit is necessarily prejudicial enough to require a new trial would demand a new trial in every case in which an improper conduct claim, but not another claim, fails to withstand appeal. I reject such a suggestion, which underestimates the intellect and integrity of juries and would have far-reaching implications as to the finality of their verdicts.

Bard next argues that the damages from the surviving claim cannot be determined because the overall award was not itemized; to award the damages from the lost profits model would be impermissible guesswork.[4] Bard relies upon the case cited by the Federal Circuit, *MCI Communications Corp. v. AT & T*, 708 F.2d 1081, 1161 (7th Cir. 1983), in which the plaintiffs alleged and the jury

---

[4] The jury instructions on the antitrust count identified three separate claims, including that Bard unlawfully leveraged its monopoly power in the guns to obtain a competitive advantage in replacement needles by modifying its gun to accept only Bard needles. The jury found in M3's favor on each of these claims.

6

found twenty-two acts of anticompetitive conduct; the Seventh Circuit determined that the evidence supported the illegality of only seven of the acts. The appeals court vacated the damage award and ordered a new trial on damages because the plaintiff's damages model did not distinguish between damages based on unlawful versus lawful conduct. The court noted that "MCI's lost profits study does not establish any variation in the outcome depending on which acts of AT&T were held to be legal and which illegal" so there was "no way to adjust the amount of damages to reflect lawful competition from AT&T." 708 F.2d at 1163. *See also Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1352 (9th Cir. 1985)("utter failure to make any segregation between damages attributable to lawful competition and that attributable to the unlawful scheme" required new trial on damages). Therefore, when there is a way to separate damages from various activities, damages should be awarded, and no new trial is necessary. In this case, I can readily separate the damages attributable to the unlawful conduct from the award. M3 separately presented two distinct types of damages evidence: (1) its litigation fees and costs incurred as a result of the patent charges against it which could be recovered under its first two theories, i.e. the *Walker Process* and *Handgards*

counterclaims, and (2) a damages model calculating its lost sales and profits due to Bard's predatory gun modification; this model dealt exclusively with the claim which was upheld. The jury awarded M3 everything it asked for and more. The damages from the unlawful conduct are clearly segregated and supported by ample evidence. Moreover, I have examined the model and find it reasonable.

Bard also states that I do not have the authority to "reduce" the jury's award and that to award M3 the judgment it seeks would be "plainly improper." *Johansen v. Combustion Engineering, Inc.* 170 F.3d 1320 (11th Cir. 1999). However, I am not substituting my own assessment or "estimate of the amount of damages which the plaintiff ought to have recovered." *Id.* at 1328; I am following the Federal Circuit's specific mandate to determine the jury's allocation of damages, if I can. I have determined that indeed I can. This award is consistent with the ideas underlying the principle of remittitur, the reduction of damages to the maximum amount supported by the evidence, in this case the lost profits damage model.[5] M3 does not argue for more than this amount, and I find it sufficiently supported and the award granted by the jury on

---

[5] Bard correctly notes that remittitur is not an option when the jury verdict is the result of prejudice, but this is an argument it has failed to support, and I have rejected with respect to this jury's verdict.

8

the monopolization claim. Because I determine there is sufficient evidence in the record, I need not decide whether the various statements by Bard in its pleadings constituted waiver. However, these references do speak to the inherent logic behind M3's position that the calculations in its damages model support the damages award it seeks.

Bard's remaining arguments are frivolous and have either been waived or already decided by the court of appeals. Bard contends that: (1) M3 cannot recover because it never pled the cause of action *upheld* by the Federal Circuit, (2) M3's damages are grossly inflated in light of "inescapable facts,"[6] and (3) somehow it did not receive a fair trial, as intimated in its myriad citations regarding the Seventh Amendment and the constitutional right to a fair trial. Additionally, (4) whether M3 sought an injunction *after* the jury verdict is irrelevant as to the award at the time of the verdict.[7] Finally, Bard characterizes M3 as the poster child "of

---

[6] Bard claims M3 is entitled only to its $10,866 modification cost, which was incurred to avoid infringement and before Bard illegally modified its biopsy gun. This challenge comes too late and is wholly unsupported by the drastically excerpted testimony it cites in support.

[7] Moreover, injunctive relief is appropriate where the harm is irreparable, and M3 has offered evidence that money damages will do nicely.

9

overreaching and corporate greed," indiscriminately wielding the antitrust laws as a sword to injure its competitors, rather than to maintain market equilibrium. But Bard instituted these proceedings and lost every count; M3 counterclaimed, and won one count in the end. Having violated federal law, and called down the Sherman Act on its head, Bard must now pay the price for its violation -- trebled damages.[8]

The Federal Circuit instructed me "to consider, after additional hearing or limited retrial, *if necessary*, the proper amount of damages attributable to Bard's gun modification program." *Bard* at 1384 (emphasis added). The parties have had a full and fair opportunity to present their arguments, and I have determined that a new trial is not necessary. Having presided over this trial and reviewed the record, I determine that the proper amount of damages allocable to Bard's predatory modification of its biopsy guns is $254,249.

---

[8] Bard decries the unfairness of M3 receiving a windfall in the form of treble damages. Such a windfall was intended by Congress as the price of antitrust violations; the dual punitive and deterrent functions were intended to protect the laissez-faire systems and free markets Bard is so concerned about.

### III. Post-Judgment Interest

Postjudgment interest is awarded to a prevailing plaintiff pursuant to 28 U.S.C. § 1961(a); *Miller v. Artistic Cleaners*, 153 F.3d 781, 785 (7th Cir. 1998). In *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827 (1990), the Supreme Court ruled that post-judgment interest begins to accrue at the date of judgment rather than the date of the verdict. *Id.* at 837. In addition, the Court set the standard for determining the starting date in a case in which there have been two money judgments entered because, for example, the first was vacated in favor of a new trial, or reversed or reduced on appeal. According to the Court,

> the purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant. Where the judgment on damages was not supported by the evidence, the damages have not been "ascertained" in any meaningful way. It would be counterintuitive, to say the least, to believe that Congress intended postjudgment interest to be calculated from such a judgment.

*Id.* (internal quotation marks and citations omitted). The central focus has thus become whether the amount of damages was sufficiently ascertainable at the relevant date. *See, e.g., Loughman v. Consol- Pennsylvania Coal Co.*, 6 F.3d 88, 97-100 (3rd Cir. 1993); *Coal Resources v. Gulf & W. Indus.*, 954 F.2d 1263,

11

1274-75 (6th Cir. 1992).

Unlike *Bonjorno*, the Federal Circuit here held the evidence was sufficient to sustain the verdict and affirmed liability; the damage award was only vacated to see if the damage claim could be segregated. I find convincing the First Circuit's standard that "where a first judgment lacks an evidentiary or legal basis, post-judgment interest accrues from the date of the second judgment; where the original judgment is basically sound but is modified on remand, post-judgment interest accrues from the date of the first judgment." *Cordero v. Jesus-Menez*, 922 F.2d 11, 16 (1st Cir. 1990). This sentiment was embraced by the Federal Circuit in *Transmatic, Inc. v. Gulton Industries, Inc.* 180 F.3d 1343, 1348-49 (Fed. Cir. 1999); *see also Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1332, 1339 (11th Cir. 1999)(where the initial judgment is supported by the evidence and the later judgment merely reflects a remittitur, courts of appeals have routinely decided that damages were sufficiently ascertained at the time of the first judgment and that post-judgment interest runs form the date of the original judgment); *Dunn v. Hovic*, 13 F.3d 58, 61 (3d Cir. 1993); *Coal Resources v. Gulf & Western Industries*, 954 F.2d 1263, 1274-75 (6th Cir. 1992); *Tinsley v. Sea-Land Corp.*, 979 F.2d 1382, 1383

12

(9th Cir. 1992); *Masinter v. Tenneco Oil Co.*, 934 F.2d 67, 68 (5th Cir. 1991). Bard's attempt to distinguish this line of cases because the jury was prejudiced or the verdict the result of error fails for the reasons discussed in Part II. above.

Because in this case there is no issue as to the sufficiency of evidence underlying the verdict, I conclude that postjudgment interest should accrue from this first judgment. Bard will suffer no prejudice; it had no trouble discerning what portion of the damage award was attributable to this count in its post-trial brief in which it referred to the $254,249 as the lost profit damages awarded by the jury and sought to reduce the award by that exact amount. To disallow interest from the original judgment would preclude M3 from being fully compensated for its damages in accordance with the antitrust laws and the spirit of § 1961.[9]

---

[9] Neither party has raised the issue of whether I have the power to order postjudgment interest given that the Federal Circuit's mandate did not include a provision for interest. Rule 37 of the Federal Rules of Appellate Procedure provides that "[i]f a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest." The Seventh Circuit has said that "'any provision for interest on a judgment cannot be made by a district court when the terms of the mandate of the Court of Appeals did not provide for interest.'" *Lee v. Terminal Transport Co.*, 301 F.2d 234, 235-36 (7th Cir. 1962); *see also Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 942 F.Supp. 1199 (N.D. Ill. 1996)(plaintiff not entitled to postjudgment interest, where mandate did not include interest instruction when it vacated

13

The damages attributable to the antitrust violation are readily ascertainable from the trial record and supported by the evidence, so an award of postjudgment interest on $254,249 from the time of the jury verdict and entry of first judgment is proper.

IV.

Judgment is entered in favor of the defendant M3 in the amount of $ 762,747.00. Postjudgment interest is entered in the amount of $ 199,838.00.

ENTER ORDER:

Elaine E. Bucklo
United States District Judge

Dated: June 26, 2000

---

damages award and remanded breach of contract action for remittitur). However, I find these cases distinguishable because the appeals court ordered a specific money judgment amount to be entered. As there was no specific amount here ordered, I do have authority to order postjudgment interest on the first judgment.

Copies are being mailed to:

Terry M. Grimm
Winston & Strawn
35 W. Wacker Drive, 41st Fl.
Chicago, IL 60601

Desiree M. Stahl
Morgan & Finnegan
345 Park Avenue
New York, NY 10154

Mark L. Hogge
Morgan & Finnegan
1775 Eye Street
Washington, D.C. 20006

Attorneys for Plaintiff

Paul E. Slater
Sperling & Slater, P.C.
55 W. Monroe Street, #3300
Chicago, IL 60603

Richard D. Harris
Dick & Harris
181 W. Madison Street, #3800
Chicago, IL 60602

Jordan A. Sigale
Sonnenschein, Nath & Rosenthal
8000 Sears Tower
Chicago, IL 60606

Attorneys for Defendant